*Hartford,*<br>June, 1831.<br><br>Holcomb<br>*v.*<br>Cornish.

---

### NEWELL *against* HOADLEY.

In an action on the case, by an execution creditor, against the sheriff, for not assigning the bail bond taken by him on mesne process, the execution debtor and the principal in the bond, is a competent witness for the defendant.

Where a debtor, a resident of *Boston*, being arrested, on a writ of attachment, in *Hartford*, in *April* 1829, gave bail and returned to *Boston*, in *May*; judgment was rendered against him in *August*, on which execution was issued, on the 13th of that month; on the 20th of *September*, the debtor came to *Hartford*, and offered to the sheriff, who had served the attachment and taken the bail bond, to surrender himself in discharge of his bail; at the same time, the bail tendered to the sheriff the surrender of the principal; and on the same day, both the bail and the principal offered to surrender him to the attorney of the creditor, who said—" I have nothing to do with him; you must keep him here until the execution is out"—on which the bail said to the principal—" You can go as quick as you please; you are at liberty;" and the principal, after having been in *Hartford*, publicly, two or three days, and frequently in the office of the creditor, who knew that the object of his visit was to surrender himself in discharge of his bail, returned to *Boston*; the execution was in the hands of said attorney from its date until the 3rd of *October*, when it was given to the sheriff, who, on the 10th of that month, made his return of *non est inventus* thereon; in an action on the case, by the creditor, against the sheriff for not assigning the bail bond, it was held, 1. that these facts being admitted or found, the liability of the defendant was purely a question of law; 2. that there could be no forfeiture of such bail bond, and, of course, no recovery upon it, without an avoidance of the principal and a return of *non est inventus* on the execution; 3. that in order to subject the

*Hartford,*
June, 1831.

Newell
*v.*
Hoadley.

bail, there must be reasonable endeavours, on the part of the creditor or officer, to take the body of the debtor, and the utmost fairness in the proceedings ; 4. that in this case, there were no such endeavours and fairness, but, on the contrary, an attempt to entrap the bail against the honesty and justice of the case, and, consequently, there was no such avoidance or return of *non est inventus* as the law requires to constitute a forfeiture of the bail bond ; and 5. that as such bond could never be enforced, no recovery could be had against the defendant for not assigning it, since the law subjects no man to damages for not doing an act perfectly nugatory.

THIS was an action on the case against the defendant, as sheriff of *Hartford* county, for neglecting and refusing to assign and deliver to the plaintiff a bail bond, executed, in *April* 1829, by *Benjamin H. Norton* as principal, and *Oliver E. Williams,* as surety. The declaration stated, That on the 30th of *April* 1829, *B. H. Norton* being indebted to the plaintiff, by a certain promissory note, in the sum of 210 dollars, 97 cents, the plaintiff, for the recovery of such debt, prayed out a writ of attachment against *Norton,* and delivered it to the defendant, then and ever since sheriff of the county of *Hartford,* by virtue of which, he, on the same day, arrested *Norton* and held him in custody until he should give bail for his appearance at court, according to the writ ; that the defendant then and there took a bail bond, in a sufficient sum ; that the plaintiff subsequently recovered judgment, in said suit, against *Norton,* for the amount of his claim ; that *Norton* did not appear in court, and wholly failed to perform the condition of the bail bond ; that the plaintiff took out an execution for the amount of the judgment, dated the 13th of *August* 1829, which, on the 3rd of *October* 1827, he delivered to the defendant to execute according to law ; that the defendant, with such execution in his hands, on the 8th of *October,* 1829, made diligent search for the money, goods and chattels, and for the body of *Norton,* and could find neither ; that on the 10th of *October* 1829, he returned said execution into the clerk's office, wholly unsatisfied, with his *non est inventus* indorsed thereon ; and that on the 20th of *October* 1829, the plaintiff requested the defendant to assign to him (the plaintiff) the aforesaid bail bond, which the defendant then refused, and ever since has refused to do, and has thereby wholly deprived the plaintiff of his remedy thereon.

The cause was tried, on the general issue, at an adjourned term in *Hartford,* in *May* 1831, before *Daggett, J.*

The plaintiff having offered evidence to prove the facts alleged in the declaration, the defendant offered in evidence the deposition of *B. H. Norton*, containing the following statement : " On the 29th of *April* 1829, being then in *Hartford*, just as I was starting for *Washington*, I was arrested on a suit in favour of *Lot Newell*, of *Hartford* ; and *Oliver E. Williams*, Esq. was bail for my appearance.  I removed from *Hartford* to *Boston*, on or about the middle of *May* 1829 ; and I have every reason to believe, that *Lot Newell* knew of my removal.  I went back again to *Hartford*, on or about the 20th of *September* 1829, and offered to surrender myself up to *Jeremy Hoadley* Esq., sheriff of *Hartford* county, in order to discharge my bail, in the case of *L. Newell* against myself ; and at the same time, *Oliver E. Williams* Esq., also tendered my surrender to the sheriff.  On the same day, I also offered to surrender myself to *Isaac Toucey* Esq., attorney for said *Newell* ; and the same tender was also made to said *Toucey*, by my bail, in the presence of the sheriff ; and said *Toucey* remarked : ' I have nothing to do with him ; you must keep him here until the execution is out ;' on which said *Williams* said : ' *Norton*, you can go as quick as you please ; you are at liberty.'  While in *Hartford*, I was at said *Newell's* office, several times ; and he knew, that the object of my visit to *Hartford* was, to surrender myself up, in order to save my bail.  Previous to this visit to *Hartford*, I had been, for some time, and then was, a resident in *Boston*, and had not resided in *Hartford* for nearly seven months, with the exception of a few days immediately preceding my arrest."

To the admission of this testimony, the plaintiff objected, on the ground that the deponent was interested in the event of the suit, he being the debtor in the execution.  The objection was overruled, and the deposition admitted.

It was agreed by the parties, that the execution was taken out, on the 13th of *August* 1829, and was in the hands of *Isaac Toucey* Esq., the attorney of the plaintiff, from that time until the 3rd of *October* following, when it was delivered to the defendant to be executed ; and that when *Norton* was in *Hartford*, in *September* 1829, he remained there publicly, two or three days.  The matter in controversy was argued by the counsel for the plaintiff, as a question of law.

The judge charged the jury, that upon the facts agreed, if they believed the deposition of *Norton* (and there was no impeachment of him) their verdict ought to be for the defendant.

Newell
*v.*
Hoadley.

The jury gave a verdict for the defendant accordingly ; and the plaintiff moved for a new trial.

*Toucey,* in support of the motion, contended, 1. That *Norton,* the principal, was an incompetent witness in this suit. It will hardly be claimed, that *Williams,* the bail, is admissible. He is the real party. But if the bail is incompetent, because he is bound to indemnify the sheriff, the principal is incompetent because he is bound to indemnify his bail. *Norton* was admitted on the ground that his interest was *equally balanced.* But is this so ? It is true, that *Norton* is, at all events, liable for the judgment debt ; but if the defendant is subjected in this suit, *Williams* must indemnify him as to both debt and *costs ;* and *Norton* must indemnify *Williams* to the same extent. *Norton,* then, has a balance of interest against a recovery in this suit, to the amount of the *costs.*

2. That upon the facts admitted and proved, the defendant was liable. The facts necessary to subject the bail, and by which, if they exist, he is necessarily subjected, are the bond, the forfeiture at common law, and the return of *non est inventus,* shewing an *avoidance.* The bond and forfeiture being admitted, the defence must remove the *non est* out of the way, or the liability of the bail is unavoidable. The return was *truly* and *legally* made by the defendant. *He* cannot and does not deny it. It was *not fraudulently* obtained. There was no proof of fraud ; and if there had been, it should have been left to the jury. If the return, then, was true, and not void for fraud, there can be no ground to invalidate it ; and we have a bail bond, forfeited at common law, with a true and valid *non est.*

The court charged the jury in effect, that because the plaintiff did not deliver the execution to the officer, when the plaintiff knew that the debtor was in *Hartford,* in *September,* the bail, by mere force and operation of law, was discharged ; for the offer to the sheriff before he had the execution, and that to the plaintiff's attorney, were nugatory. But can it be maintained, that the presence of the debtor, with the knowledge of the creditor, on the fortieth day of the execution, and before it is delivered to the officer, discharges the bail, so that a subsequent avoidance and *non est* are of no effect ? *Stevens* v. *Bigelow,* 12 *Mass. Rep.* 434.

Further, the bail in this case was *privy* to the avoidance of

the debtor: he told him *to go.* Suppose the bail had, at that time, *concealed* the debtor, would he still be discharged?

*Hungerford* and *J. Griswold,* contra, contended, 1. That *Norton* was a competent witness. The only question between the parties was the defendant's liability for not assigning the bail bond; and in the result of that question *Norton* had no interest. If the defendant is liable for not assigning, it is because he has neglected to do his own duty; for which *Norton* is not responsible. Between the defendant and *Norton* there is no contract of indemnity, express or implied. *Norton* is liable for the amount of the execution, in any event; but the result of this suit will not affect him, even as to costs.

2. That the bail in this case was discharged. The law is construed favourably for the bail. It requires the exercise of due diligence and the utmost fairness, on the part of the creditor, in his endeavours to collect his execution. *Fitch* v. *Loveland, Kirby* 380. 381. 387 per *Ellsworth, J. Johnson* v. *Smith,* 1 *Root* 373, 4. *Edwards* v. *Gunn,* 3 *Conn. Rep.* 316. The facts admitted on the trial, and embraced in *Norton's* deposition, bring the case within the principles stated in these authorities.

3. That if the bail were discharged, no action will lie against the sheriff for not assigning the bail bond. *Jones* v. *Lander,* 6 *Term Rep.* 753. *Stamper* v. *Milbourne,* 7 *Term Rep.* 122. *Ryan* v. *Watson,* 2 *Greenl.* 312.

4. That if the matter in controversy were in itself proper to be tried by a jury, the plaintiff, by arguing it as a question of law and referring it to the court, waived all objection on that account, and thus it became a proper question for the court to decide. 9 *Cowen* 224, 5. 697. 2 *Wend.* 59, 60. 450.

DAGGETT, J. The first question to be considered, is, whether *Norton* was a competent witness for the defendant, on the trial of this cause to the jury. The only objection to him was, a supposed interest in the event of this suit. It is impossible for me to see any interest in this witness. He is liable, at all events, for the debt and costs of the judgment,—the amount of the execution. This liability cannot, in any way, be affected, by this process, or any judgment which may be rendered thereon. The counsel for the plaintiff, when pressed to show his interest, finally point to his liability to indemnify his bail, *O. E. Williams.* It is said, that

49

there was an implied contract, on the part of *Norton*, to indemnify his surety against all liability on account of his becoming bail. Doubtless this is so. But the position supposes, that the bail may be *liable* for something, against which the principal is bound to indemnify. Now, wherein can that liability consist? This suit is brought against the sheriff, for neglect of official duty, in refusing to assign this bail bond. If the sheriff should be subjected to the whole amount of the execution, with interest and additional costs, how can he render the principal or the bail, liable? They did not contract, that the sheriff should do his duty, and assign this bail bond ; and when challenged therefor, each may say, there was no such condition in our bond—*non hæc in fœdera veni.* In this simple view of the question, the objection to *Norton* as a witness, vanishes.

2. It is said, that the court below erred in the instructions given to the jury. Here, it becomes important to examine into the facts sworn to, by *Norton*, and agreed to, by the parties. These were the basis of the decision.

It appears by the deposition of *Norton*, that he had not resided in *Hartford*, for about seven months previous to *October* 1829, except for a few days when he was arrested. The judgment against him was rendered in *August*. About the 20th of *September* following, he went to *Hartford*, and offered to surrender himself to *Hoadley*, the sheriff, who had arrested him, in discharge of his bail. *O. E. Williams*, his bail, also tendered him to the sheriff ; and on the same day, he offered to surrender him to *I. Toucey* Esq., *the attorney of the plaintiff*, in presence of the sheriff ; and *Toucey* remarked : " I have nothing to do with him ; you must keep him until the execution is out." The bail then said : " You may go as quick as you please ; you are at liberty." He further swears, that while in *Hartford*, he was frequently in the office of the plaintiff, who knew that his visit to *Hartford* was to surrender himself, to save his bail ; and that he then was, and for some time before had been, a resident in *Boston.* It was agreed, by the parties, on the trial, that the execution was taken out, and dated, on the 13th of *August* 1829, and was in the hands of *I. Toucey* Esq., attorney for the plaintiff, from the date to the 3rd of *October*, when it was delivered by him to the sheriff. It was also agreed, that when *Norton* was in *Hartford*, in *September*, he was there publicly, two or three days. It

was alleged in the declaration, that on the 8th of *October*, the sheriff made diligent search, &c. with the execution, and on the 10th of *October*, returned it into the office whence it issued, with a *non est inventus* thereon.	The execution was returnable in sixty days from the 13th of *August*.	It appears on the motion, that the cause was argued, by the plaintiff's counsel, as a question of law.	The court told the jury, that upon the facts agreed, taken with those contained in *Norton's* deposition, if they believed his deposition, (and there was no impeachment of him) their verdict ought to be for the defendant ; and a verdict was accordingly found for the defendant.

It is now said, that this charge was erroneous ; for that the facts should have been submitted to the jury.	What facts ought to have been submitted ?	Surely, not those alleged in the plaintiff's declaration, and not questioned by the defendant ; nor those agreed to, by the parties.	And as to those contained in the deposition, the question whether they were to be believed, was submitted to the jury.	This objection certainly comes with an ill grace from the counsel for the plaintiff, who argued the cause as wholly a question of law.	Did he intend it to be considered a question of *law*, if the court should decide it *in his favor*, but a question of *fact*, if the court should decide the law *against* him ?	But in cases where facts and the law arising on them, are to be decided, the facts being conceded, or proved beyond doubt, generally a question of law only remains.	Surely, it was purely a question of law, upon these facts, there being no pretence of any others, whether the defendant was liable in this action on the case.	There is no solidity, then, in this objection.

It is again said, that the sheriff has returned a regular *non est inventus ;* and it was his duty to assign the bail bond ; and that he cannot be heard to allege, that the bond was discharged, by the conduct of the plaintiff.	This objection is susceptible of two answers ; each of which is sufficient.

In the first place, the statute, *tit.* Bail, (*p.* 62.) points out the duty of the sheriff, and the previous steps necessary to be taken, to subject the bail.	In the 4th section, it is provided, that the surety or sureties shall be obliged to satisfy the judgment, *in case of the principal's avoidance and a return of non est inventus on the execution.*	In a subsequent section, it is made

the duty of the officer to assign the bail bond. It is quite clear, that there can be no forfeiture of this bond, and, of course, no recovery can be had thereon, unless there has been an avoidance of the principal and a return of *non est inventus.* Consequently, there can never be a right in the plaintiff to demand an assignment, nor can it be the duty of the defendant to assign it, until both those facts have occurred. This is the fair construction of the statute. And the same doctrine is established, by the cases of *Jones* v. *Lander,* 6 *Term Rep.* 753. and *Stamper* v. *Milbourne,* 7 *Term Rep.* 122. *Ryan* v. *Watson,* 2 *Greenl.* 382.

But secondly, if there be a complete defence to this bond, or in other words, if it can never be enforced, why should the plaintiff recover against the defendant for not assigning it ? It is of no value : it is as worthless as a piece of blank paper. The law compels no man to do an entirely vain thing. It subjects no man to damages for not doing an act perfectly nugatory. *Ryan* v. *Watson,* 2 *Greenl.* 382. In support of this position, there is also a very strong case, decided by this Court, and reported in 5 *Day* 128. *Bacon* v. *Norton.* There, in an action brought by the assignee of a note against the maker for fraud in taking a discharge from the promisee, it was holden, that usury might be set up between these parties as a defence. The court said, that the usury rendered the note void ; and that the promisee, being convinced of that, though it was in the hands of a person ignorant and innocent of the usury, might well discharge it.

The great point is yet to be considered. Has the plaintiff obtained such a *non est inventus* on this execution, or has the principal so *avoided,* as that the plaintiff is entitled to any remedy against the bail ? I am well satisfied, that both these questions must be answered in the negative. The construction of our statute is in entire conformity with reason. " When it appears, that there have not been reasonable endeavours, on the part of the creditor or officer, to levy the execution on the estate or person of the debtor, but rather an intention and endeavour to avoid doing it, in order to charge the bail ; or if the bail render the body of the debtor, or he render himself to the officer, to be taken by the execution, at any time before the return day ; the bail ought to be exonerated." *Fitch* v. *Loveland, Kirb.* 384. " There ought to be the utmost fairness in the proceedings, in order to subject the bail." *Johnson* v. *Smith,* 1

*Root* 374. " A return made without the exercise of due diligence, to subject the bail, is fraudulent and void." *Edwards* v. *Gunn*, 3 *Conn. Rep.* 318. These are some of the leading principles, adopted by our courts.

Aside from any authority, what principles ought to be adopted in this case ? Has there been any *avoidance ?* What is an avoidance ? The act of avoiding or shunning. Here the debtor offers himself to the sheriff, to the attorney of the plaintiff and to the plaintiff himself, in discharge of his bail, while the execution is in full force, and in the hands of the attorney. He stays two or three days in *Hartford*, publickly. The attorney says to the bail: " I have nothing to do with him ; you must keep him until the execution is out." He then, as well he might, leaves *Hartford* for *Boston*, the place of his residence ; and on the 3rd of *October*, the execution is delivered to the officer, who keeps it seven days, and returns it, on the 10th, indorsed with a *non est inventus.* Who can look at these facts, and not clearly see a set design, on the part of the plaintiff, to charge the bail—a studied avoidance of taking the body of the debtor ? It would be a libel to call this conduct of the plaintiff a reasonable endeavour—due diligence—the utmost fairness, in attempting to take the body of the debtor. On the contrary, it is an attempt to entrap the bail against the honesty and justice of the case ; and, as such, instead of being rewarded, should be censured.

The only authority cited by the plaintiff, is *Stevens* v. *Bigelow*, 12 *Mass. Rep.* 434. That case, when examined, appears not to contain a principle or *dictum*, in opposition to the opinion here expressed.

In my opinion, the rule must be discharged.

The other Judges were of the same opinion, except **WILLIAMS**, J., who gave no opinion, being related to the bail.

New trial not to be granted.